**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| VEGGIE CREATIONS, LLC, et al., | Case No.: 2:20-CV-05709-MHW-CMV |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Magistrate Judge Chelsey M. Vascura |
| CJ AMERICA, INC., dba CJ FOODS, INC., | **PLAINTIFFS' AND COUNTERCLAIM** |
| Defendant. | **DEFENDANTS' FED. R. CIV.  P. 19** |
| | **MOTION** |

Now come Plaintiffs and Counterclaim Defendants Veggie Creations, LLC ("Veggie Creations") and Nature's One, LLC, ("Nature's One" jointly, "Plaintiffs"), by and through counsel, and submit this brief pursuant to Fed. R. Civ. P. 19 in response to this Court's November 21, 2022, Order.

As is more fully set out in the attached Memorandum in Support, this lawsuit arises out of a longstanding contractual relationship between Plaintiffs and Defendants CJ America, Inc. ("CJ America") and CJ Foods USA, Inc. ("CJ Foods" jointly, "Defendants"). The Parties' contract, which included both Plaintiffs and Defendants, addressed the manufacture and sale of two food products to non-party Trader Joe's. It is undisputed that the two products were well-recognized and would have been selling at Trader Joe's for years to come but for both Defendants' unlawful actions towards the Plaintiffs.

As both Defendants are necessary and indispensable parties under Fed. R. Civ. P 19 and joinder of CJ Foods will destroy this Court's subject matter jurisdiction, this case must be dismissed in equity and good conscience so that the litigation may conclude in state court with all necessary and indispensable parties. *See* Fed. R. Civ. P. 19.

1

Respectfully Submitted,


/s/David A. Campbell
David A. Campbell (0066494)
Theresa A. Edwards (0090971)
Lewis Brisbois Bisgaard & Smith
1375 E. 9th Street, Suite 2250
Cleveland, Ohio 44114
T. 216.344.9422/F. 216.344.9421
David.A.Campbell@lewisbrisbois.com
Tera.Edwards@lewisbrisbois.com
*Counsel for Plaintiffs/Counterclaim Defendants*
*Veggie Creations, LLC and Nature's One, LLC*

## Memorandum in Support

I.    **Introduction**

Discovery conducted to date has confirmed CJ America is the parent company to CJ Foods, CJ Foods' sales and business relationship with Plaintiffs was under the control of CJ Foods' Vice President of Sales, John Sim, and both Defendants went directly to Trader Joe's to attempt to cut Plaintiffs out of their contract, steal Plaintiffs' food products, and to unlawfully take more profits for themselves. *See* Deposition of John Sims, page 6, lines 19-25; pages 8-9, lines 24-6; pages 63-65, lines 7-13; pages 92-100, lines 19-17.[1] Plaintiffs did not learn the substance of both Defendants' communications with Trader Joe's until the completion of certain discovery in July and August, 2022.

This discovery revealed that the Defendants' communications disclosed confidential information, disparaged Plaintiffs, and were designed to undermine Plaintiffs' business relationship with Trader Joe's. Thus, both Defendants are necessary and indispensable parties under Fed. R. Civ. P 19. Since joinder of CJ Foods will destroy this Court's subject matter jurisdiction, this case must be dismissed in equity and good conscience so that the litigation may conclude in state court with all necessary and indispensable parties.[2]

II.    **Factual Developments Confirming CJ Foods is an Indispensable Party**

Written discovery was recently completed, and Defendants deposed John Sim, CJ Foods' Vice President of Sales, on July 26, 2022. Although a corporate deposition of Defendants' representative was not completed, the testimony presented by the corporate representative on

---

[1]This Court is already in possession of the deposition transcript of John Sim as it was provided per the Court's request via email on September 6, 2022, with all counsel included on the correspondence. Due to concerns regarding the existing Protective Order, undersigned counsel is filing this Motion without the cited deposition pages attached and will supplement with the cited transcript pages pending counsel for Defendants' agreement.
[2]Plaintiffs and CJ Foods are both citizens of Delaware. *See* Order, Doc. No. 62, PageID 420-422.

3

August 2, 2022, also confirmed CJ Foods is an indispensable party and the existence of additional causes of action against both Defendants.

Until the completion of written discovery and the first two depositions requested by Plaintiffs, Plaintiffs were unaware of the substance of both of Defendants' communications with Trader Joe's, the intent of both Defendants when making these communications, and the existence of an identical product still being manufactured by both Defendants in their Columbus, Ohio manufacturing site. All the facts set forth below are undisputed because they are written in documents produced by Defendants or testified to by Defendants' representatives.

A. **The Parties' Contractual Relationship**

The Parties contractual relationship began on December 7, 2006. The 2006 contract was between two local companies, Kahiki Foods, Inc. ("Kahiki") and Plaintiffs. Discovery has confirmed that Kahiki and Plaintiffs were profitable business partners from prior to 2006 through 2019. Plaintiffs had the relationship with Trader Joe's and food scientists with expertise to design products sought by Trader Joe's. Kahiki had a manufacturing site and a willingness to manufacture the Trader Joe's products for Plaintiffs. The evidence has shown that the Kahiki relationship with Plaintiffs was profitable, uneventful, and productive until 2019, after both Defendants purchased the stock of Kahiki.

The 2006 contract provided both Defendants would manufacture Tempura Chicken Sweet & Sour and Thai Stix for Plaintiffs. The 2006 contract further provided Plaintiffs would sell the Tempura Chicken Sweet & Sour and Thai Stix to Trader Joe's. The 2006 contract made clear that Plaintiffs owned the formula, the two products, and that both Defendants were prohibited from selling the Tempura Chicken Sweet & Sour and Thai Stix to any person or entity aside from Plaintiffs. Finally, the 2006 contract required both Defendants to keep the contract, Plaintiffs'

4

formulae and other business information created under the contract or provided by Plaintiffs to Defendants, confidential.

CJ America is the parent company to CJ Foods. The Defendants are a South Korean based food manufacturer and retailer. This lawsuit has revealed that in 2018, Defendants purchased the stock of Kahiki. No notice was provided to Plaintiffs of the transaction or Defendants' involvement in the satisfaction of the 2006 contract.  Defendants have conceded that Kahiki provided them with a copy of the 2006 contract during the transaction and that Defendants had notice of Plaintiffs' contract with Kahiki, the two products, and the sales to Trader Joe's. After Defendants acquisition of Kahiki, all sales and business relations with Plaintiffs were managed and controlled by CJ Foods' Vice President of Sales, John Sim.

**B.** **Defendants Lay the Groundwork for Their Actions In 2019**

In 2019, even though Defendants had already purchased Kahiki's stock, Kahiki reached out to Plaintiffs and advised Plaintiffs that Kahiki may enter into a transaction with Defendants in the future, that Defendants are not ethical business partners, and that Kahiki believed that Plaintiffs should confirm their relationship in a new contract in order to protect the relationship between Plaintiffs and Kahiki.  Based on Kahiki's representations, the Parties entered into a 2019 contract on July 1, 2019.

The 2019 contract includes both Plaintiffs and both Defendants. It confirms that Plaintiffs own the Tempura Chicken Sweet & Sour and Thai Stix. It confirms Plaintiffs' confidential information.  Finally, the 2019 contract has a one-year term, but it recognized the continuing nature of the relationship by requiring: "Not less than thirty (30) calendar days from the expiration of the Term, the parties shall meet and discuss in good faith regarding the possibility of extending and/or renewing the Term."

Confirming the confidential nature of the contract, both Defendants, unlike Kahiki, had other products that they sold to Trader Joe's in 2018 and 2019.  Due to the Defendants relationship with Trader Joe's, both Defendants understood and believed that the Trader Joe's vendor agreement requires complete confidentiality of all information relating to products manufactured and sold to Trader Joe's. The confidentiality requirements are so broad – in Defendants' view – that they are prohibited from disclosing the products manufactured, the pricing, the length of contract, or any information regarding any of Defendants' dealings with Trader Joe's.

Despite these confidentiality obligations which are understood and agreed to by Defendants, discovery has revealed that in December, 2019 that Defendants began their discussions with Trader Joe's regarding their relationship with Plaintiffs and the Tempura Chicken Sweet & Sour and Thai Stix sold to Trader Joe's by Plaintiffs.  Defendants did not provide notice to Plaintiffs of these discussions nor request authorization to have these conversations. Rather, until a December 23, 2019, letter agreement, signed by Plaintiffs on January 10, 2020, Plaintiffs were unaware of Defendants' involvement in the contract between Kahiki and Plaintiffs.

### C.     Defendants' Breach the Contract In 2020

On April 8, 2020, Defendants aggressively moved forward with their plan to take the Tempura Chicken Sweet & Sour and Thai Stix from Plaintiffs as their own products.  Again, without any notice to Plaintiffs, Defendants directly contacted Trader Joe's and advised Plaintiffs' customer that Defendants "will not be renewing" the 2019 contract with Plaintiffs. Incredibly, Defendants advised Plaintiffs' customer that Defendants purchased the rights to the Tempura Chicken Sweet & Sour and Thai Stix when Defendants purchased Kahiki's stock. The written production and depositions have confirmed that this statement was knowingly false. In fact, five

6

months later, while addressing a high-level issue under the contract, Defendants' executive confirmed that Plaintiffs "owned the IP of the product."

While the contract with Plaintiffs was still in effect, both Defendants continued their direct communications with Trader Joe's. These communications discussed price, the sales of the Tempura Chicken Sweet & Sour and Thai Stix, and other information that were confidential under the 2019 contract. Defendants made clear to Trader Joe's that Plaintiffs were not aware of the communications with Trader Joe's or Defendants' intentions. Most telling, Defendants confirmed to Trader Joe's that they understood that the Tempura Chicken Sweet & Sour and Thai Stix were "established" and "doing quite well." Finally, Defendants quoted a price to Trader Joe's that was below Plaintiffs' price, but above the price for Defendants' sales to Plaintiffs.

The first notice of Defendants' intention to take the products for themselves to Plaintiffs was on May 21, 2020. At that time, despite the obligation to "meet and discuss in good faith regarding the possibility of extending and/or renewing the Term," both Defendants simply advised Plaintiffs that the 2019 contract was not being extended. Incredibly, Defendants also informed Plaintiffs that Trader Joe's "is aware" of Defendants' actions and that Trader Joe's needed Plaintiffs to execute a document confirming Defendants' ownership of the Tempura Chicken Sweet & Sour and Thai Stix.

Plaintiffs refused to execute the document and informed Defendants in no uncertain terms that Defendants' actions were unlawful, in breach of the 2019 contract, and were placing Plaintiffs' longstanding Trader Joe's products at risk. For the sole reason that Trader Joe's had not yet cut out Plaintiffs from the business relationship, both Defendants continued the contract with Plaintiffs beyond July 1, 2020.

D.    **Defendants' Extended The 2019 Contract for The Sole Purpose to Continue Their Unlawful Actions**

7

On August 31, 2020, both Defendants provided a proposed new contract to Plaintiffs for execution. Demonstrating their true intentions, the new contract took out the good faith discussion requirement from the contract and sought to replace it with a mere 30-day notice requirement. Defendants' attorney provided the draft contract for review. The following day, Defendants' Vice President of Sales, John Sim, followed the attorney email with an explicit threat: "We need this agreement signed and returned by this week or I'll have to inform Mary Ann that we may have disruption in service." Mary Ann was the Trader Joe's buyer responsible for the sales of the Tempura Chicken Sweet & Sour and Thai Stix.

Consistent with his threat, John Sim advised his subordinate on September 3, 2020, that he was "pissed" and that terminating Plaintiffs' contract would open "capacity to our branded business." In response, John Sim's subordinate advised him that the "risk" faced by both Defendants was that Trader Joe's would look negatively on both Defendants. To mitigate this risk, John Sim and Defendants decided to disparage Plaintiffs' "business practices" to Trader Joe's and blame Plaintiffs for the disruption in products to Trader Joe's despite the fact the disruption was due to the actions of CJ Foods' Vice President of Sales, John Sim.

Within minutes of John Sim's direction, his subordinate emailed Mary Ann at Trader Joe's and blamed the potential disruption in the production of the products on Plaintiffs. The email further advised Trader Joe's that both Defendants had discussed the issue with their "legal team," and the legal team would like to meet with Trader Joe's to verify that Plaintiffs "have no right to the recipe or the business in general. . .." In the weeks that followed, both Defendants continued their attacks on Plaintiffs to Trader Joe's – the goal of these disparagements were to either take the products as their own or to direct Trader Joe's' ire to Plaintiffs, not both of the Defendants, for the end of the products.

E.   **Defendants' Unlawfully Terminated the Contract Because Trader Joe's Would Not Replace Plaintiffs**

Trader Joe's, due to Plaintiffs being listed as vendor of record, would not cede to Defendants' demands to cut Plaintiffs out of the contract Plaintiffs had in place with both Defendants. Due to Trader Joe's position, Defendants terminated the contract they had with Plaintiffs without notice, and informed Trader Joe's that the stoppage of the products was due to Plaintiffs' unethical business practices. Discovery has revealed this course of conduct was completed at the direction of CJ Foods' Vice President of Sales, John Sim.

Discovery has shown that neither of the Defendants returned Plaintiffs' recipe or other trade secrets. Rather, both Defendants simply continued to manufacture Plaintiffs' product, the Tempura Chicken Sweet & Sour, and began to sell it to retailers aside from Trader Joe's. Due to both Defendants' unlawful actions, Plaintiffs lost the Trader Joe's contract for Tempura Chicken Sweet & Sour and Thai Stix. Additionally, due to Defendants' disparagements of Plaintiffs, most critically those by CJ Foods Vice President of Sales John (or at his direction), Plaintiffs' longstanding Trader Joe's business has suffered greatly in 2021 and 2022.

Ultimately, there is no question both CJ America and CJ Foods, as parties to the contract with Plaintiffs, are intrinsically intertwined in this case and Plaintiffs' claims. And, much of the unlawful conduct of both Defendants was perpetrated by or completed at the direction of CJ Foods' Vice President of Sales, John Sim. As CJ Foods' sales and business relationship with Plaintiffs was admittedly under the control of CJ Foods' Vice President of Sales, John Sim, there is no question this litigation cannot proceed without the presence of both CJ America and CJ Foods.

III.   **Legal Analysis**

A.   **Fed. R. Civ. P 19**

The United States Court of Appeals for the Sixth Circuit employs a three-step analysis when determining whether joinder is proper under Fed.R.Civ.P. 19. *See Glancy v. Taubman Ctrs., Inc.,* 373 F.3d 656, 666 (6th Cir.2004); *Laethem Equip. Co. v. Deere & Co.,* No. 10-1994, 485 Fed. Appx. 39, at *43-44 (6th Cir. June 13, 2012). "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy,* 373 F.3d at 666. "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id.* "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case [such as destroy diversity jurisdiction], the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience dismiss the case because the absentee is indispensable." *Id.*

**B.      CJ Foods is a Necessary Party under Fed. R. Civ. P. 19(a)**

Under the first step of this three-part test, the Court must determine if the absent entity is necessary under Rule 19(a). Fed.R.Civ.P. 19(a) states:

(a) Person Required to be Joined if Feasible.
  (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
  (A) in that person's absence, the court cannot accord complete relief among existing parties;
  (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i)     as a practical matter impair or impede the person's ability to protect the interest; or
    (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a).

In the instant case, in the absence of CJ Foods, this Court cannot accord complete relief among the remaining parties. *See* Fed. R. Civ. P. 19(a)(1)(A). Both CJ America and CJ Foods are parties to the contract involving the Plaintiffs and this case involves claims of breach of contract.

10

"In general, the indispensable parties in a breach of contract action are the parties to the contract." *Norfolk S. Ry. V. Baker Hughes Oilfield Operations, LLC,* 443 F. Supp. 3d 877, 883 (S.D.Ohio 2020). And critically, much of the unlawful and inappropriate conduct, including disclosure of confidential information and disparaging statements to Trader Joe's, which irreparably harmed Plaintiffs, was performed by or carried on at the request of CJ Foods Vice President of Sales, John Sim. Accordingly, this Court cannot accord complete relief among the parties in the absence of CJ Foods.

Further, there is no question that CJ Foods has "an interest relating to the subject of the action" as CJ Foods' absence from this litigation would impair or impede its ability to protect its interests and it would subject CJ America to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *See* Fed. R. Civ. P. 19(a)(1)(B). A sufficient interest under Fed. R. Civ. P. 19(a)(1)(B) exists where an absent party "could" claim an interest in a contract between existing parties. *See PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 201 (6th Cir.2001) *See also Prosser v. XTO Energy, Inc.,* No. 2:12-cv-0883, 2013 U.S. Dist. LEXIS 59373, at *11 (S.D. Ohio Apr. 25, 2013) ("It is not necessary that the party presently claim an interest in the subject matter of the litigation. If the absent party could claim an interest, that is enough to fall within Rule 19(a)(1)(B)".).

Here, CJ Foods has a direct interest in this action. Critically, CJ Foods was a contracting party with Plaintiffs at all relevant times. CJ Foods' Vice President of Sales, John Sim, organized the unlawful course of conduct Defendants engaged in to undermine Plaintiffs' business relationship with Trader Joe's. John Sim understood Plaintiffs objected to CJ Foods' course of conduct, and that still, CJ Foods was continuing to have direct communication with Trader Joe's in violation of Defendants' contract with Plaintiffs. *See* Deposition of John Sim, page 94-95, lines

23-1; pages 98-99, lines 4-9; pages 107-111, lines 2-21; pages 112-115, lines 24-12; pages 123-pages 125, lines, 2-2; pages 172-175, lines 3-7. Ultimately, Plaintiffs cannot proceed in pursuing their claims for relief without the involvement of CJ Foods, an indispensable party, given the unlawful conduct at issue was committed by CJ Foods.

### C. Joinder of CJ Foods Will Deprive this Court of Subject Matter Jurisdiction

This Court has already determined the joinder of CJ Foods will eliminate this Court's ability to hear the case as diversity jurisdiction will be destroyed considering Plaintiffs and CJ Foods are both citizens of Delaware. *See* Order, Doc. No. 62, PageID 420-422. As joinder of CJ Foods is not feasible because it will eliminate this Court's ability to hear the case, this Court must analyze the Fed. R. Civ. P. 19(b) factors to determine whether the court should "in equity and good conscience" dismiss the case because CJ Foods is indispensable. *See* Fed. R. Civ. P. 19(b).

### D. In Equity and Good Conscience, this Action Must be Dismissed so the Litigation May Conclude in State Court with all Necessary and Indispensable Parties

As CJ Foods is an indispensable contracting party in this breach of contract action, Fed. R. Civ. P. 19(b) sets forth the following factors for this Court to consider in determining whether the case should be dismissed:

> (b) When Joinder is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19.

Here, for many of the same reasons that CJ Foods is a necessary party to this action, the Court must also find that Rule 19(b) factors weigh in favor of dismissal. Any judgment rendered in the absence of CJ Foods would severely prejudice Plaintiffs and CJ Foods as Plaintiff's allegations directly place both CJ Foods and CJ America at the center of Plaintiffs' injuries and damages. Not only is CJ Foods' Vice President of Sales, John Sim, on record as the person who controlled the sales and business relationship with Plaintiffs, but his testimony and communications confirm CJ Foods went directly to Trader Joe's to cut Plaintiffs out of their contract, steal Plaintiffs' food products, and to unlawfully take more profits for themselves.

Should this Court fail to dismiss this case to be litigated in state court, this means that Plaintiffs and CJ Foods will remain subject to subsequent litigation arising out of the transactions and events described in Plaintiffs' Complaint. Thus, a judgment rendered in CJ Foods absence would not be adequate given the allegations Plaintiffs have asserted against CJ Foods, thereby increasing the chance of subsequent litigation (and with it, potentially inconsistent findings, or obligations). In light of these issues, there is no way to lessen or avoid both Plaintiffs' and CJ Foods' prejudice for purposes of the second Rule 19(b) factor.

Finally, as to the fourth Rule 19(b) factor, Plaintiffs have an obvious remedy if this action were dismissed for nonjoinder. Plaintiffs can refile this action in state court against both CJ America and CJ Foods. *See Carter v. Deutsche Bank Nat'l Trust Co.*, No. 16-4163, 2017 U.S. App. LEXIS 21398, 2017 WL 4740570, at *4 (6th Cir. Aug. 30, 2017) (Finding that "[Plaintiff] has an adequate remedy in state court."); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 205 (6th Cir. 2001) ("The final factor under Rule 19(b) . . . favors dismissal, because the state court presents an alternative forum in which [Plaintiff] can bring his claims."); *Morelli v. Morelli*, No. C2-00-988, 2001 U.S. Dist. LEXIS 25457, 2001 WL 1681119, at *5 (S.D. Ohio Sept. 27, 2001) ("The

availability of an action in state court constitutes an adequate alternative remedy.") (citing *Jenkins v. Reneau*, 697 F.2d 160, 163 (6th Cir. 1983)). This final factor weighs heavily in favor of dismissal of this case.

## IV. <u>Conclusion</u>

Wherefore, there is no question that CJ Foods is a necessary and indispensable party to this action which cannot be feasibly joined, and in equity and good conscience, the Court must dismiss this case pursuant to Fed. Civ. R. P. 19(b).

Respectfully Submitted,

*/s/David A. Campbell*
David A. Campbell (0066494)
Theresa A. Edwards (0090971)
Lewis Brisbois Bisgaard & Smith
1375 E. 9th Street, Suite 2250
Cleveland, Ohio 44114
T. 216.344.9422/F. 216.344.9421
David.A.Campbell@lewisbrisbois.com
Tera.Edwards@lewisbrisbois.com
*Counsel for Plaintiffs/Counterclaim Defendants*
*Veggie Creations, LLC and Nature's One, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the forgoing was filed electronically on December 16, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/David A. Campbell*
David A. Campbell (0066494)
Theresa A. Edwards (0090971)
Lewis Brisbois Bisgaard & Smith
*Counsel for Plaintiffs/Counterclaim Defendants*
*Veggie Creations, LLC and Nature's One, LLC*